UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANGELA L. MESSMAN, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>MICHAEL ASTRUE, Commissioner )<br>of Social Security, )<br>)<br>Defendant ) | CAUSE NO. 1:10-CV-472 RLM |

OPINION and ORDER

Angela Messman seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), 1382; Donahue v. Barnhart, 279 F.3d 441, 443 (7th Cir. 2002) ("The substantive standards for supplemental security income are materially the same as those for Social Security disability benefits."). Ms. Messman filed her initial applications for disability benefits (in October 2006) and supplemental security income (in September 2006) based on complaints of bipolar disorder, anxiety, and depression with an onset date of April 25, 1998; those applications were denied initially and on reconsideration. Ms. Messman then requested an administrative hearing, which was held on August 6, 2009 before Administrative Law Judge Terry Miller. At that hearing, Ms. Messman amended her onset date to December 31, 2002. The ALJ issued his written decision on

October 19, 2009, concluding that Ms. Messman wasn't disabled under the Act. The Appeals Council denied her request for review on October 28, 2010. The court has jurisdiction over this action under 42 U.S.C. § 405(g).

Ms. Messman, her mother, and a vocational expert testified at the hearing before the ALJ, medical evidence was submitted, and Ms. Messman was represented by counsel during the proceedings. In a detailed written decision, the ALJ followed the standard five-step sequential evaluation used in these matters, *see* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), and concluded that Ms. Messman's physical complaints (myalgia, arthralgia, lower back pain, fibromyalgia, and abdominal/pelvic pain) and mental impairments (bipolar disorder, borderline personality disorder, depression) were severe, but she didn't have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

The ALJ found that testimony by Ms. Messman and her mother, and the statements made by her grandmother, about the intensity, persistence, and limiting effects of Ms. Messman's symptoms weren't completely credible. According to the ALJ, no medical evidence corroborated Ms. Messman's "allegations of not being able to sit, stand, or walk for prolonged periods, suffering from disabling levels of pain or fatigue, difficulty using her hands to handle objects or write, difficulty stooping and climbing, not being able to lift more than a gallon of milk, or needing to take naps during the day. . . . [Ms. Messman's] daily activities, which

2

generally include caring for her personal needs, caring for her young son, preparing meals, driving, going to the park with her son, and shopping for groceries, are not consistent with the above-noted allegations. Finally, [Ms. Messman's] work activity since 2002, although not at substantial gainful activity levels, is not consistent with her allegation of disabling pain and fatigue, difficulty using her hands, inability to lift more than a gallon of milk, or inability to sit, stand, or walk for prolonged periods." Rec., at 18. The ALJ concluded that the overall record supported a finding that Ms. Messman had the residual functional capacity to perform light work with restrictions. The vocational expert testified that based on Ms. Messman's age, education, work experience, and residual functional capacity, she would be able to perform the requirements of light work, such as that of a maid, mail clerk, and food preparation worker.

The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Ms. Messman's request for review. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed. Ms. Messman challenges the ALJ's decision, arguing that he improperly evaluated the opinion of Park Center psychiatric nurse Karen Lothamer and improperly evaluated Ms. Messman's credibility and testimony about her own symptoms. Ms. Messman concludes that the ALJ's decision wasn't supported by substantial evidence and a remand is warranted.

I. STANDARD OF REVIEW

3

The court must affirm the Commissioner's determination if it is supported by substantial evidence, 42 U.S.C. § 405(g); Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). The court can't re-weigh the evidence, make independent findings of fact, decide questions of credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009), but in reviewing the ALJ's conclusions, "[t]he court will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

II. Discussion

*A. Testimony of Karen Lothamer*

Ms. Messman first argues that the ALJ didn't properly credit and evaluate the opinion of Karen Lothamer, a clinical nurse specialist with the Park Center in Fort Wayne, Indiana, who met with Ms. Messman four times in 2008-2009. Ms. Messman notes that in July 2009 Ms. Lothamer submitted a "Mental Impairment Questionnaire" and a "Medical Source Statement of Ability To Do Work-Related Activities (Mental)," in which she reported that Ms. Messman was suffering from fibromyalgia and bipolar disorder and would be unable to perform activities within a schedule, maintain regular attendance, be punctual, or complete a normal workday or workweek. Rec., at 839-843. According to Ms. Messman, Ms. Lothamer's statements that Ms. Messman would likely be absent from any job more than four days a month and would be unable to complete work-related activities due to mood swings and lack of focus are consistent with the episodic nature of bipolar disorder. Ms. Messman concludes that the ALJ's findings to the contrary aren't supported by substantial evidence in the record.

The ALJ's decision is quite detailed in its reasoning and citations to the record and takes note of all Ms. Messman's alleged impairments and of the medical evidence and personal statements relating to her claimed impairments. In addition to considering Ms. Lothamer's reports, the ALJ reviewed the findings of medical records from the Park Center, Parkview Behavioral Health Center, and Parkview Memorial Hospital; Dr. Richard Kelty and Dr. Charles Coats, Ms. Messman's former primary care physicians; Dr. Patricia Marciano-Lee, Ms. Messman's current primary care physician; gynecological specialists Dr. Leslie

5

Swartz-Williams, Dr. Rosemary Leitch, and Dr. Jyothirmai Reddy; Dr. Monica Reddy, a rheumatologist; and state agency medical consultants Dr. Sherwin Kepes, Dr. F. Kladder, Dr. Donna Unversaw, and Dr. J.V. Corcoran. *See* Rec., at 17-21.

The ALJ specifically discussed Ms. Lothamer's opinion that Ms. Messman couldn't return to work and concluded that her opinion wasn't entitled to great or controlling weight. He reviewed Ms. Messman's mental health history and treatment records dating from 2004 through Ms. Lothamer's 2009 reports and concluded that Ms. Lothamer's claims about the severity of Ms. Messman's condition were inconsistent with the objective mental status examination findings. *See* Rec., at 17-21. The ALJ found that Ms. Lothamer's opinion about Ms. Messman's limitations was inconsistent with Ms. Messman's daily activities, which included being able to care for her own personal needs and those of her three-year-old son, preparing meals, and being able to drive. Rec., at 21. The ALJ also found Ms. Lothamer's opinion about Ms. Messman's inability to function to be inconsistent with Ms. Messman's scores on the Global Assessment of Functioning (GAF) scale, scores that averaged 55, indicating that her symptoms were moderate, not severe or disabling. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 32-34 (4th ed. 2000).[1]

---

[1] "A GAF between 41 and 50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shop-lifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." In turn, a GAF between 51 and 60

Ms. Messman says the ALJ ignored the fact that her problems were evident each time she saw Ms. Lothamer. She cites Ms. Lothamer's March 26, 2009 examination report noting that she (Ms. Messman) was overwhelmed with work, her son, and her finances; she was depressed, had fair judgment, a detached attitude, and overactive and agitated behavior; and the correlation between her medication and course of illness was "much worse," which resulted in a change in medications. Rec., at 703-706. But records also show that less than two months later, on May 19, 2009, Ms. Lothamer met again with Ms. Messman and reported that while Ms. Messman was depressed and anxious, she had no self-harm thoughts or behavior and no sleep, appetite, or substance abuse problems; she had no suicidal, homicidal, or memory problems; her judgment was fair, her attitude and behavior were cooperative, her speech was normal, and her thoughts were coherent, her current mental status was "appropriate;" and she was fully compliant with her medications. Ms. Lothamer concluded that Ms. Messman was symptomatic but stable. In her May 19 report, Ms. Lothamer recommended that Ms. Messman continue her medications and undergo periodic monitoring of her medications and mental health functioning, and that another appointment be scheduled in three months. Rec., at 802-806.

---

reflects "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Jelinek v. Astrue, 662 F.3d 805, 807 n.1 (7th Cir. 2011) (*quoting* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM–IV–TR) 34 (4th ed. 2000)).

Medical evidence from the Park Center also includes a plan developed for Ms. Messman by Ms. Lothamer and six other Park Center representatives, dated May 11, 2009, that diagnosed Ms. Messman with bipolar disorder with moderate symptoms or moderate difficulty in social, occupational, or school functioning, and reported that while Ms. Messman was having trouble sleeping, she had a moderate degree of self-care impairment, was generally optimistic, had held jobs for reasonable periods of time, was able to identify her strengths and partially utilize them, possessed some skills at finding necessary resources to aid in a healthy lifestyle, and was generally involved in recovery. Rec., at 815-816. Neither the May 11 plan nor the notes of Ms. Lothamer's May 19 examination describe Ms. Messman's mental or physical condition as "much worse" or "disabling." In fact, the May 19 report indicates Ms. Messman's condition had improved and the correlation between her medication and course of illness was "symptomatic but stable." Rec., at 805. Ms. Lothamer's July 10 reports, submitted less than two months after her plan of May 11 and report of May 19, don't mention any further examination(s) of Ms. Messman or receipt of information indicating that Ms. Messman's condition had become debilitating.

The medical evidence, as well as the reasoning the ALJ set forth in his written decision, supports his conclusion – *i.e.,* he provided "an accurate and logical bridge between the evidence and the result," O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010) – that Ms. Lothamer's opinion about the severity of Ms. Messman's mental health functioning and physical limitations was

inconsistent with other evidence in the record. The ALJ's decision to not assign great weight to Ms. Lothamer's opinion is supported by substantial evidence in the record and, so, doesn't warrant remand.

*B. Ms. Messman's Symptom Testimony*

Ms. Messman argues that the ALJ improperly evaluated her testimony about her symptoms. She first says that even though she engages in the activities the ALJ listed, "when an individual is mentally ill, an ability to engage in 'activities of daily living' even with only mild limitations does not translate into an ability to work full-time." Memo., at 22.

The ALJ noted that Ms. Messman testified about her physical condition as follows: she had aches and pains in her whole body; intermittent abdominal pain; the inability to walk and stand for more than 25-30 minutes at a time, sit for more than 60 minutes, and lift more than a gallon of milk; hand cramps when she writes for too long; problems gripping and grasping objects; leg pain and tiredness when she stoops and climbs stairs; exhaustion when attempting to do chores; and takes naps daily. Rec., at 16. He noted that, in contrast, Ms. Messman testified that she could engage in a wide range of daily activities, including appropriately caring for her personal needs and those of her young son, driving, preparing simple meals, watching television and movies, taking her son to the park, reading books to her son, attending church fairly regularly, acting appropriately, and being pleasant at times. Rec., at 14.

The ALJ then reviewed the medical evidence relating to medical care and treatment of Ms. Messman's physical condition: the physical examination during Ms. Messman's June 2004 emergency room treatment for anxiety and depression was within normal limits with no significant physical problems, Rec., at 17; physical examination findings by her former primary care physicians, Dr. Kelty and Dr. Coats, and her current treating physician, Dr. Marciano-Lee, "have generally been unremarkable," Rec., at 17; and the physical examinations in 2005 by Dr. Swartz-Williams, in 2006 by Dr. Leitch, and in 2009 by Dr. Reddy that resulted in findings that were essential unremarkable, Rec., at 18. The ALJ noted that in 2009 Ms. Messman underwent surgery for mild endometriosis, peri-ovarian adhesions, a left-side hydrosalpinx, and bowel adhesions to her pelvic sidewall and ovary, which resulted in a reported improvement to her abdominal pain. The ALJ noted, too, that the state agency medical consultants determined that Ms. Messman's physical residual functional capacity wasn't limited. Rec., at 18.

The ALJ also discussed Ms. Messman's mental status testimony that she suffers from anxiety, depression, and bipolar disorder, she doesn't like being in crowds, she's usually not depressed only one day per week, she won't get out of bed or talk to people when she's depressed, she's frequently frustrated with people, she's forgetful and needs to be reminded to take her medication, do chores, and keep appointments, she often fights and argues with her mother, and generally gets along with her grandmother and the father of her son. Rec., at 15-

16. The ALJ reviewed Ms. Messman's mental health records, including emergency room treatments, hospitalizations, out-patient treatments at Park Center, treatments by Drs. Coats, Marciano-Lee, and Leitch, and a mental status examination requested by the Social Security Administration. Rec., at 19-21. The ALJ found that those medical records showed that Ms. Messman's GAF score averaged 55, and that her "GAF scores of 50 or below . . . generally occurred during brief periods of acute exacerbations of her mental impairments. Each time, [Ms. Messman] improved within twelve consecutive months." Rec., at 21.

Based on his review of Ms. Messman's testimony and the medical evidence in the record, the ALJ concluded that no medical evidence corroborated Ms. Messman's "allegations of not being able to sit, stand, or walk for prolonged periods; suffering from disabling levels of pain or fatigue, difficulty using her hands to handle objects or write, difficulty stooping and climbing, not being able to lift more than a gallon of mile, or needing to take naps during the day." Rec., at 18. He concluded, as well, that while the medical evidence confirmed that Ms. Messman suffers from depression and bipolar disorder, her live testimony suggested far more incapacitation than the medical evidence suggested: "[U]ndermining the allegations of disabling symptoms and limitations from her mental impairments made by [Ms. Messman], her mother, and her grandmother are the reports of [Ms. Messman's] activities, which include caring for her personal needs, driving, watching movies, being able to count change, and having friends. In addition, if the claimant were as limited as alleged, it seems quite unlikely that

11

she would be able to care for her baby as she has done largely independently since he was born." Rec., at 19.

Ms. Messman complains that the ALJ discredited her testimony that she's unable to engage in any employment due to her physical and mental conditions. Ms. Messman notes that she was fired from a number of jobs because she missed too much work and/or couldn't to do what was expected of her. The ALJ noted that while Ms. Messman worked after her disability onset date, her work activity didn't rise to the level of substantial gainful activity. Rec., at 13. He then considered the medical evidence relating to Ms. Messman's physical impairments and concluded that "a light residual functional capacity seems reasonable, as there was no confirmation of major problems in standing or walking or lifting/carrying items from 10 to 20 pounds." Rec., at 18-19. The ALJ cited the findings of State Agency psychologists relating to Ms. Messman's mental impairments that she could perform simple, repetitive tasks on a sustained eight-hour basis, couldn't perform tasks that involve fast or strictly paced work, could be around others throughout the workday, but should have only brief routine interactions with others. According to the ALJ, that opinion was "consistent with [Ms. Messman's] mental status examination findings" that he discussed in his decision. Rec., at 19-21. Concluding that the medical evidence supported a finding that Ms. Messman's symptoms were moderate, not severe or disabling, the ALJ determined that she had the residual functional capacity to perform a full range of light work with limitations. A fair reading of the ALJ's decision is that Ms.

Messman's impairments impact, but don't wholly eliminate, her ability to perform basic work tasks. *See* Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, [courts must] give it a commonsense reading [and] reverse credibility determinations only if they are patently wrong."); Berger v. Astrue, 516 F.3d 539, 546 (7th Cir. 2008) ("[Claimant] continued to work . . . on a part-time basis. Although the diminished number of hours per week indicated that [claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."). The court can't say that the ALJ's conclusion is without support in the record.

Ms. Messman also says the ALJ went "too far in discrediting her testimony based on her mental presentation at the hearing." She maintains "an individual with bipolar disorder does not always have the same level of functioning [and] for the ALJ to believe that he can apparently evaluate her mental condition by simply observing her at hearing is beyond his expertise." Memo., at 25. The ALJ's evaluation wasn't based only on his observation of Ms. Messman at the hearing. The ALJ described Ms. Messman's mental presentation at the hearing by stating that "other than a few tearful moments, . . . [Ms. Messman] seemed very lucid, gave responsive answers, and did not demonstrate any odd behaviors," and found that her demeanor "was not consistent with disabling symptoms." Rec., at 19. As already discussed, the ALJ's written decision contains specific reasons for his credibility findings and many citations to medical evidence that supported those

reasons. *See* Johnson v. Barnhart, 449 F.3d 804, 805 (7th Cir. 2006) (an ALJ is "not obliged to believe all [of a claimant's] testimony. Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case."); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").

Ms. Messman complains the ALJ discredited her testimony based on her lack of compliance with her medications and therapy sessions without asking her about or considering her explanations. The ALJ didn't specifically ask Ms. Messman about her lack of compliance at the hearing, but he addressed the issue of non-compliance in his written decision, noting that Ms. Messman and her mother both testified that she needed to be reminded to take her medication and keep appointments, her grandmother confirmed that such reminders were necessary, and progress reports from the Park Center "clearly indicate that [Ms. Messman] was not always compliant with her medication therapy or with keeping her appointments for group or individual therapy sessions; she alleged that this was due to problems with childcare and transportation." Rec., at 16-17, 20. The ALJ observed that Ms. Messman's "level of mental capacity may also be hindered by her lack of compliance with her medications and therapy sessions as documented in the record," Rec., at 19, and opined that "were [Ms. Messman] to be compliant with her medications and therapy sessions, her condition would

14

likely further improve." Rec., at 21. Thus, Ms. Messman is incorrect in her statement that the ALJ didn't consider that she often needs to be reminded to take her medications and keep her appointments or that she often missed appointments due to transportation and childcare problems. At the administrative hearing, Ms. Messman was represented by counsel, who was available to ask her to supplement the record with any information he thought wasn't sufficiently covered by the ALJ. *See* Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007) ("a claimant represented by counsel is presumed to have made his best case before the ALJ"). Ms. Messman claims the ALJ was "required by SSR 96-7p to consider explanations for instances where an individual did not keep up with treatment," Memo., at 23, and, as just discussed, the ALJ did just that.

Ms. Messman lastly claims the ALJ's suggestion that she might have applied for benefits to obtain income to support herself and her child is nothing more than speculation and doesn't amount to substantial evidence to support a finding. A review of the ALJ's decision confirms that the statement at issue wasn't the sole reason for his discounting Ms. Messman's testimony, and while the statement might not be supported by substantial evidence, substantial evidence supports the ALJ's overall findings and conclusions and his credibility determination relating to Ms. Messman's testimony isn't patently wrong. *See* Elder v. Astrue, 529 F.3d 408, 413-414 (7th Cir. 2008) ("It is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong.'").

III. CONCLUSION

The ALJ's decision was articulate, detailed, and supported by numerous citations to the medical evidence, and he accurately and logically bridged the connection between the evidence and the denial of benefits. The court DECLINES Ms. Messman's request to remand this action for further proceedings and AFFIRMS the ALJ's denial of benefits.

SO ORDERED.

ENTERED:   March 13, 2012

                                            /s/ Robert L. Miller, Jr.
                                          Judge, United States District Court